# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

WILLIAM A. ANDERSON,

    Plaintiff,

v.

AMERICAN GENERAL LIFE INSURANCE
d/b/a AIG LIFE AND RETIREMENT,

    Defendant.

NO. 4:17-CV-117

## ORDER

The Court previously dismissed this case finding that it must be arbitrated. Dkt. No. 4-3. Plaintiff timely refiled the complaint. Dkt. No. 1. Subsequently, the Court stayed and administratively closed this case pending resolution of the arbitration. Dkt. No. 10. The final arbitration award has been entered and filed with the Court. Dkt. No. 16-1. Nevertheless, Plaintiff, acting *pro se*, filed a Motion to Vacate Arbitration Award, dkt. no. 22, which is presently before the Court. The Motion has been fully briefed and is ripe for review. For the reasons that follow, Plaintiff's Motion is **DENIED**.

## BACKGROUND

After this Court ruled and the Eleventh Circuit affirmed that Plaintiff's claims must be arbitrated, on July 5, 2017, Plaintiff filed a demand for arbitration with the American Arbitration

Association ("AAA"). Dkt. No. 25-1. In the demand, Plaintiff made the following relevant claims: (1) that his former employer, Defendant American General Life Insurance ("AIG") failed to promote him because of Plaintiff's race as an African-American in violation of Title VII of the Civil Rights Act of 1964; (2) that AIG violated 42 U.S.C. § 1981 by refusing to afford Plaintiff the same right to make and enforce his employment contract as was enjoyed by a similarly situated white male; (3) that AIG illegally retaliated against Plaintiff in violation of Title VII when Plaintiff engaged in protected activity; (4) that the arbitration agreement requiring these claims to be arbitrated was unenforceable because it was breached by AIG; (5) that the arbitration agreement lacked consideration; (6) that the arbitration agreement was not mandatory and thus was unenforceable; (7) and that Plaintiff was entitled to punitive damages.

An arbitrator, Beverly P. Baker, was assigned to the case, and she entered an Initial Case Management Order. Dkt. No. 22-3. That document states that an "initial telephone management conference call" was held on September 29, 2017, in which the parties, their attorneys, the arbitrator, and a case manager for the AAA participated. Id. at 2. During that telephone call, Plaintiff argued that the arbitration agreement should be voided for reasons (4) – (6) listed above. Id. As a result of this

argument, the arbitrator requested briefings on these issues, and she made her ruling on these issues in her Initial Case Management Order. Id. In that Order, the arbitrator rejected these three claims and explained her bases for doing so. Id. As a result, the arbitrator concluded that she had jurisdiction over Plaintiff's remaining claims. Id.

After the initial management phone call, Plaintiff created and signed a memorandum recapping some of the discussions that he found troubling. Dkt. No. 22-2. Relevant to this Order, Plaintiff noted that the arbitrator refused to hear evidence on the three claims that were raised. Id. at 2. Thus, Plaintiff was, according to the memorandum, not permitted to present evidence on the three jurisdictional claims that the arbitrator rejected. Id.

On March 28, 2018, the parties were notified that Arbitrator Baker recused herself from the case. Dkt. No. 25-4. At some point thereafter, a new arbitrator was appointed to the case, Patricia A. Renovitch. Dkt. No. 22-5. Plaintiff resubmitted to Arbitrator Renovitch his three claims arguing that the arbitrator lacked jurisdiction, but Renovitch refused to revisit those issues and stood by the conclusions of Arbitrator Baker as memorialized in the Initial Case Management Order. Id. at 2. The parties were notified of Renovitch's decision on May 11, 2018. Id.

On early September 2018, a multi-day trial was held on Plaintiff's remaining claims. Dkt. Nos. 22-6, 22-7, 22-8. After

the trial, the parties submitted closing argument briefs setting forth their contentions. Dkt. Nos. 22-15, 22-18. On December 5, 2018, Renovitch issued a twenty-seven page Interim Award detailing her findings of fact, conclusions of law, and the ultimate award. Dkt. No. 22-11. The factual findings relevant to this Order are that in 2003 Plaintiff was hired by AIG to be a sales agent. Id. at 5. In early 2012, Plaintiff was still a sales agent and was told by the general manager of his office, Thomas Gallo, that a service manager position would soon become vacant and that Plaintiff should stay and compete for it—at the time, Plaintiff was considering leaving AIG. Id. at 6. When the position became vacant, Gallo created a promotion contest for the service manager ("SM") position. Id. Three of the applicants were black, and one was white, Roy Watson. Id. Watson, the white applicant, was eventually deemed the winner of the contest and was given the position. Id. at 10-11. Arbitrator Renovitch agreed with Plaintiff that the promotion contest discriminated against the black applicants, in favor of the white applicant. Id. at 21. But, Renovitch rejected Plaintiff's two other substantives claims and his punitive damages claim. Id. at 22-27.

After the interim award was entered, Plaintiff filed a Request for Reconsideration, setting forth many grounds in which he believed Arbitrator Renovitch erred. Dkt. No. 22-9. On January

22, 2019, Renovitch rejected Plaintiff's arguments and entered a Final Award. Dkt. No. 22-19.

Plaintiff filed this motion to vacate the award under 9 U.S.C. § 10(a) alleging that Arbitrator Baker and Arbitrator Renovitch erred, were biased, and misbehaved in many ways when adjudicating Plaintiff's claims.

## DISCUSSION

### I. Refusal to Hear Evidence Claim

Plaintiff first argues that the award should be vacated under 9 U.S.C. § 10(a)(3) because Arbitrator Baker refused to hear evidence regarding three of Plaintiff's claims that sought to void the arbitration agreement. Baker rejected these claims and held that the arbitration agreement was valid. Dkt. No. 22-3 at 2. Plaintiff also claims that Arbitrator Renovitch declined to revisit Baker's refusal, and thus, Renovitch also refused to hear that same evidence. The claims centered around the contention that the arbitrator lacked jurisdiction; specifically, they were: (1) that Defendant violated an "open door policy" that was part of the arbitration agreement, voiding the agreement and making it unenforceable; (2) that the arbitration agreement lacked consideration; and (3) that the arbitration agreement was "not mandatory and/or enforceable as set forth in the [Employee Dispute Resolution program]," dkt. no. 25-1 at 5. The evidence Plaintiff wished to present but was not permitted to was testimony from

AO 72A
(Rev. 8/82)

witnesses about "upper management['s] knowledge of the contest manipulations." Dkt. No. 22 at 18. These witnesses "had information concerning what senior management said and did regarding the contest and job positions [Plaintiff] wanted to address by utilizing the open-door policy." Id.

Under 9 U.S.C. § 10(a)(3) an arbitration award must be vacated "[w]here the arbitrators were guilty of misconduct in refusing . . . to hear evidence pertinent and material to the controversy." Nevertheless, arbitrators "enjoy wide latitude in conducting an arbitration hearing," and they "are not constrained by formal rules of procedure or evidence." Robbins v. Day, 954 F.2d 679, 685 (11th Cir. 1992), overruled on other grounds, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 948 (1995). "An arbitrator need not consider all the evidence the parties seek to introduce but may reject evidence that is cumulative or irrelevant." Scott v. Prudential Sec., Inc., 141 F.3d 1007, 1017 (11th Cir. 1998). "In addition, '[a] federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings.'" Rosensweig v. Morgan Stanley & Co., 494 F.3d 1328, 1333 (11th Cir. 2007) (quoting Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901, 763 F.2d 34, 40 (1st Cir. 1985)).

AO 72A
(Rev. 8/82)

Here, the evidence that Plaintiff wished to present, as Plaintiff characterizes it, was not material to the claims at issue. Plaintiff wished to present evidence about upper management's alleged knowledge of the contest manipulations, but under Arbitrator Baker's ruling, this knowledge has no bearing on whether a violation of the open-door policy voided the arbitration agreement, whether the arbitration agreement lacked consideration, or whether the agreement was mandatory. Regarding the first issue—whether a breach of the open-door policy invalidated the arbitration agreement—Arbitrator Baker specifically found that Plaintiff's "insistence that [Defendant's] alleged failure to honor its Open Door Policy is fatal to the validity of the Agreement is also unavailing. . . . The Open Door Policy is an option and the agreement to arbitrate is mandatory." Dkt. No. 22-3 at 2. Further, Arbitrator Renovitch determined that she would not reopen and thus reconsider these issues. The evidence Plaintiff wished to present may have been material to whether the open-door policy was breached, but Baker deemed the issue of whether the policy was breached to be irrelevant to whether the agreement was enforceable because she found that the policy was optional but that the agreement to arbitrate was mandatory. Thus, she implicitly found that a breach of the optional, open-door policy does not affect the validity of the mandatory, arbitration agreement. Accordingly, the evidence Plaintiff wished to present

7

has not been shown to be "pertinent and material," 9 U.S.C. § 10(a)(3). Looking at the other two issues, the same result is warranted. Whether or not upper management was aware of the contest manipulations had no bearing on whether the arbitration agreement lacked consideration or whether it was mandatory.[1]

For these reasons, Plaintiff's motion with respect to the arbitrators' refusals to hear evidence claim is due to be **DENIED**.

## II. Spoliation and Partiality Claim

Plaintiff next claims that the award must be vacated under 9 U.S.C. § 10(a)(2) and (3) because Renovitch showed partiality and misconduct by not enforcing spoliation sanctions against Defendant. Section 10(a)(2) provides for vacatur "where there was evident partiality or corruption in the arbitrators." Further, "the evident partiality standard is satisfied 'only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists.'" Mendel v. Morgan Keegan & Co., Inc., 654 F. App'x 1001, 1003 (11th Cir. 2016) (quoting Gianelli Money Purchase Plan & Tr. v. ADM Inv'r Servs., Inc., 146 F.3d 1309, 1312 (11th Cir. 1998)). Here, Plaintiff

---

[1] Notably, Plaintiff does not claim that he was barred from presenting this evidence at the arbitration trial in support of his discrimination claims. Rather, he only argues that he was barred from presenting this evidence for consideration of his claims going to the validity of the arbitration agreement.

8

neither contends nor proves that an actual conflict existed or that a person could have reasonably believed one existed. Thus, § 10(a)(2) does not apply.

Turning to § 10(a)(3) it provides in relevant part that an arbitration award may be vacated "where the arbitrators were guilty . . . of any other misbehavior by which the rights of any party have been prejudiced." In response to AIG's summary judgment motion during arbitration, in his closing brief after the arbitration trial, and in his request for reconsideration of the interim award, Plaintiff moved for a finding of and remedy for spoliation. In each of these three requests, Plaintiff argued that Defendant failed to retain new business pending reports even though Defendant was on notice of pending litigation. As a remedy, Plaintiff requested that he was "entitled to a spoliation presumption that the reports would conclusively demonstrate that Gallo and Watson successfully manipulated the NFYP sales to ensure Watson's success to the detriment of the Black employees." Dkt. No. 22-14 at 20. While these records may have conclusively demonstrated manipulation, Plaintiff cannot show that he was prejudiced by a lack of a spoliation finding or spoliation presumption because the arbitrator found in favor of Plaintiff on this issue. Arbitrator Renovitch found that "[t]he overwhelming record evidence shows the SM promotion contest was a pretext to promote the white applicant." Dkt. No. 22-11 at 19. Part of that

9

evidence was the fact that "Gallo 'pushed through' new business for Watson during the SM contest." Id. at 21. In total, this "and other record facts reveal Gallo created, altered, and implemented SM promotion criteria to favor the white applicant." Id. Thus, because the arbitrator reached the conclusion that Plaintiff sought with the aid of a spoliation presumption, Plaintiff cannot show prejudice, or even partiality.

Furthermore, to the extent Plaintiff argues that a finding of spoliation would have impacted the punitive damages determination by Renovitch, this claim fails. Renovitch found the following regarding punitive damages:

> Upon consideration of the entire record, the preponderance of the competent and substantial evidence does not prove AIG's upper management (Benton, Parman and Luckett) knew about or supported Gallo's discriminatory treatment of the black applicants, including [Plaintiff], during the SM promotion contest. While Gallo may have acted with reckless indifference to [Plaintiff's] Section 1981 and Title VII rights during the pretextual SM promotion contest, the record does not show upper management did. Accordingly, punitive damages are not awarded.

Dkt. No. 22-11 at 26. Plaintiff argued in the closing brief at the arbitration trial that the evidence "would conclusively demonstrate that Gallo and Watson successfully manipulated the NFYP sale to ensure Watson's success to the detriment of the Black employees." Dkt. No. 22-15 at 35; see also Dkt. No. 22-14 at 20 (arguing in opposition to Defendant's summary judgment in arbitration that "the reports would conclusively demonstrate that

Gallo and Watson successfully manipulated the NFYP sales to ensure Watsons' success to the detriment of the Black employees"). Comparing Plaintiff's characterization of what the evidence would have shown to Renovitch's findings on punitive damages, it is clear that the former would not have impacted the latter. Plaintiff stated both in his opposition to Defendant's summary judgment motion and in his closing brief after the arbitration trial that the evidence would have showed that *Gallo* and *Watson* manipulated the contest. The punitive damages finding, however, does not dispute this but instead, found that upper management, i.e., *Benton*, *Parman*, and *Luckett*, were not aware of the contest manipulation. See Dkt. No. 22-11 at 26 ("[T]he preponderance of the competent and substantial evidence does not prove AIG's upper management (Benton, Parman and Luckett) knew about or supported Gallo's discriminatory treatment of the black applicants, including [Plaintiff], during the SM promotion contest."). Plaintiff's characterization of the spoliated evidence, then, is consistent with the punitive damages award and would not have impacted it.

Plaintiff's spoliation request contained in his request for reconsideration of the interim award, however, recharacterizes the evidence from his prior spoliation requests. In the request for reconsideration of the interim award, Plaintiff stated that the allegedly spoliated evidence "would have proven whether or not

11

upper management, specifically Curtis Benton in this case, manipulated not only the white competitor, but also the black competitors' numbers." Dkt. No. 22-9 at 6-7. Nevertheless, in the final award Renovitch "decline[d] to modify the Interim Award because the issue raised in [Plaintiff's request for reconsideration] was fully considered and properly resolved in the Interim Award." Dkt. No. 22-19 at 2. Renovitch's refusal to address Plaintiff's new argument of what the allegedly spoliated evidence would have shown does not show misbehavior. Rather, Renovitch had the power to not consider this new argument when Plaintiff was given every opportunity to make it prior to the interim award. Further, Plaintiff's recasting of the argument at that late stage in the arbitration proceedings and after the interim award is concerning.

Plaintiff's claim fails because he cannot show prejudice, and more fundamentally, he cannot show misbehavior. At most, Plaintiff can show that the arbitrator never explicitly ruled on his spoliation requests. This, by itself, is not evidence of misbehavior—especially considering that the arbitrator ruled in Plaintiff's favor on the claim that the allegedly spoliated evidence (as characterized by Plaintiff prior to the entering of the interim award) would have proven. Renovitch's refusal to address squarely Plaintiff's new argument, which was made for the first time after the interim award, is not evidence of misbehavior.

For these reasons, Plaintiff's motion with respect to Renovitch's failure to rule on Plaintiff's spoliation requests is due to be **DENIED**.

**III. Contention that Arbitrator Renovitch Asserted a Defense on Defendant's Behalf**

Plaintiff next argues that Arbitrator Renovitch showed partiality, exceeded her powers, and committed a manifest disregard for the law when she allegedly implemented a defense on behalf of Defendant that it did not request. In his motion to vacate, Plaintiff argues that "Arbitrator Renovitch asserted a defense [that] Defendnat never pled," which "allowed the Defendant to avoid punitive damages and was a clear overstepping of Arbitrator Renovitch's authority and [a] violation of her agreement for neutrality in ruling by [a] preponderance of [the] evidence." Dkt. No. 22 at 6. See also id. at 8 ("Arbitrator Renovitch also exceeded her authority, displayed partiality and manifestly disregarded the law when she implemented a defense on behalf of the Defendant that they did not request, in order to avoid awarding punitive damages.").

Ignoring the procedural posture of the narrow review this Court must undertake, Plaintiff's argument fails on its merits because the reason for the arbitrator's ruling on the punitive damages claim was not based on any defense. Rather, the arbitrator found that "the preponderance of the competent and substantial

13

evidence does not prove AIG's upper management (Benton, Parman and Luckett) knew about or supported Gallo's discriminatory treatment of the black applicants, including [Plaintiff], during the SM promotion contest. While Gallo may have acted with reckless indifference to [Plaintiff's] Section 1981 and Title VII rights during the pretextual SM promotion contest, the record does not show upper management did." Dkt. No. 22-11 at 26. The arbitrator prefaced this conclusion by recognizing the burden Plaintiff faced: "To be awarded punitive damages. [Plaintiff] acknowledges he must present '*substantial evidence* that the *employer* acted with actual malice or reckless indifference to his federally protected rights,' citing to Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269,1280 (11th Cir. 2002) (citing Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536-37, 119 S. Ct. 2118, 2125-26, 144 L.Ed.2d 494 (1999)) (emphasis added)." Id. at 25. The arbitrator, then, did not manufacture a defense but simply found that Plaintiff could not satisfy his burden of proving punitive damages. Furthermore, Defendant argued in its post-trial brief that Plaintiff could not meet his burden of proof on any of his claims. Thus, the arbitrator did not manufacture a defense for Plaintiff, but found, in line with Defendant's arguments, that Plaintiff could not meet his burden of proof for his punitive damages claim. Accordingly, the factual basis of Plaintiff's argument is squarely contradicted by the record.

14

For these reasons, Plaintiff's motion with respect to his argument that the arbitrator improperly manufactured a defense for Defendant is due to be **DENIED**.

**IV. Contention that Arbitrator Renovitch did not Rule by a Preponderance of the Evidence**

Plaintiff's next argument states that the arbitrator first agreed to rule by a preponderance of the evidence but then changed her position. In the "Conclusion" section of his motion to vacate, Plaintiff elaborates on his position: "AIG in its closing arguments produced, in defiance to the Arbitrator's agreement, an affirmative position that Defendant had an exceedingly light burden with the ability to implement a single nondiscriminatory reason for their action, while stating [Plaintiff] needed a 'substantial' burden (Exhibit 18, p. 2-3). Arbitrator Renovitch violated her contractual agreement to rule by [a] preponderance of [the] evidence and adopted AIG's exceedingly light assertion to the detriment of [Plaintiff]." Dkt. No. 22 at 23. Plaintiff goes on to argue that "[f]or a fair and neutral minded Judge, Arbitrator, Jury, or average citizen, the final decisions by Arbitrator Renovitch concerning the second and third claim [sic] would have been impossible to reach based on the concept of [a] preponderance of [the] evidence." Id.

The record contradicts Plaintiff's position that Renovitch did not make her determinations based on a preponderance of the

15

evidence standard. See, e.g., Dkt. No. 22-11 at 3 ("The following findings of fact are based on the preponderance of the reliable evidence presented at the arbitration hearing on September 5-7, 2018."); id. at 20 ("Consideration of the preponderance of the reliable evidence in this record shows Gallo's promotion process and ultimate recommendation of the only white applicant for the SM position, with upper management's approval, discriminated against the black applicants including [Plaintiff]. Accordingly, [Plaintiff] proved the SM promotion contest was racially discriminatory in violation of his Section 1981 and Title VII rights."); id. at 21 ("The preponderance of the reliable record facts shows AIG had a legitimate business reason to appoint Pickett to temporarily collect on agency #24 from August 13 – October 8, 2012. [Plaintiff] did not prove this rationale was discriminatory."); id. at 23 ("The preponderance of the reliable record evidence does not establish AIG delayed this process in violation of [Plaintiff's] Section 1981 or Title VII rights. Accordingly, [Plaintiff] did not prove claim #3."); id. at 26 ("Upon consideration of the entire record, the preponderance of the competent and substantial evidence does not prove AIG's upper management (Benton, Parman and Luckett) knew about or supported Gallo's discriminatory treatment of the black applicants, including [Plaintiff], during the SM promotion contest."). In essence, Plaintiff is asking the Court to disagree with Arbitrator

Renovitch's findings and conclusions and to issue contrary findings and conclusions. That is not the role of the Court.

For these reasons, Plaintiff's motion with respect to his argument that the arbitrator applied the wrong standard of review is due to be **DENIED**.

**V. False Evidence Claim**

Plaintiff also argues that Arbitrator Renovitch made a false finding of fact and based her denial of Plaintiff's second claim—that AIG violated 42 U.S.C. § 1981 by refusing to afford Plaintiff the same right to make and enforce his employment contract as was enjoyed by a similarly situated white male—on that allegedly false finding of fact. Specifically, Plaintiff argues that "Rick Pickett was erroneously identified as having collected the service agent position #24 in May 2012 when Roy Watson was given the trial manager position. . . . it appears that the Arbitrator [Renovitch] based her interim decision primarily on this concept not present during the trial or via depositions." Dkt. No. 22 at 7 (quoting Formal Request for Reconsideration Dkt. No. 22-9 at 4); see also dkt. no. 22 at 13 ("For claim number two, Rick Pickett was erroneously and falsely identified as having collected the service agent position #24 in May, 2012 by counsel for AIG, that evidence and testimony was not presented during the entire proceeding, however the arbitrator based her decision primarily on this concept. . . .").

17

Plaintiff misreads and consequently misstates the interim award and Renovitch's findings and conclusions in that award. Renovitch did not find that Pickett collected the service agent position in May 2012. Instead, she found that "[t]he preponderance of the reliable record facts shows AIG had a legitimate business reason to appoint Pickett to temporarily *collect* on agency #24 from *August 13 - October 8, 2012*." Dkt. No. 22-11 at 22 (emphases added); see also id. at 11 ("On August 27, 2012, Claimant found out from Watson [that] someone else was going to take his vacated position. The agent was Rick Pickett, a white service agent. Claimant 'was stunned' and immediately went to see Gallo. He told Claimant [that] Pickett was temporarily taking over service agency #24 for a limited time because he wanted Pickett to be able to make more money during the 'heavy collection' weeks in September and October."); id. at 22 ("Claimant claims his Section 1981 and Title VII rights were violated when Gallo appointed Pickett to temporarily collect premiums on service agency #24 from August 13 to October 8, 2012."). Thus, Plaintiff's claim that Renovitch relied on the erroneous fact that Pickett collected on service agent position #24 in May 2012 is squarely contradicted by the interim service award, which shows that Renovitch found that Pickett first collected on that position in August 2012.

AO 72A
(Rev. 8/82)

For these reasons, Plaintiff's motion with respect to his false evidence claim is due to be **DENIED**.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Vacate Arbitration Award, dkt. no. 22, is hereby **DENIED**. All other pending motions are **DENIED as moot**.

**SO ORDERED**, this 19th day of March, 2019.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA